WO

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Bradley Bieganski,

          Petitioner,

v.

David Shinn, et al.,

          Respondents.

No. CV-21-01684-PHX-DWL

**ORDER**

On September 30, 2021, Petitioner filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254.  (Doc. 1.)  On November 14, 2022, Magistrate Judge Morrissey issued a report and recommendation ("R&R") concluding that the petition should be denied and dismissed with prejudice.  (Doc. 19.)  Afterward, Petitioner filed objections to the R&R (Doc. 22), Respondents filed a response (Doc. 25), and Petitioner filed a reply (Doc. 30).

As explained below, Petitioner's objections largely lack merit.  The only exception is that Petitioner should, contrary to the recommendation in the R&R, be granted a certificate of appealability ("COA").  Otherwise, the Court agrees with the conclusions set forth in the R&R, including that Petitioner is not entitled to habeas relief.

## RELEVANT BACKGROUND

I.    <u>The Charges, Trials, And Sentencing</u>

From 2011 until his arrest in 2013, Petitioner operated a girls-only private Christian home-school called "Kingdom Flight" along with his wife and son.  (Doc. 19 at 2.)  The arrest occurred after three girls attending Kingdom Flight (A.G., Y.L., and J.C.) accused

Petitioner of touching their genitals when they were between the ages of 6 and 9.  (*Id.*)  Most of the allegations arose from a Sunday morning bathing practice that Petitioner referred to as an "assembly line," in which he would hurriedly bathe six to eight Kingdom Flight girls in pairs within 30 minutes before departing for a church service.  (*Id.*)  The alleged genital contact during that process involved Petitioner touching and manually washing the girls' vaginas with his bare hand.  (*Id.*)  Additionally, Y.L. accused Petitioner of touching her genitals on two other occasions: once when she was getting dressed after swimming and another time when she was in the Kingdom Flight girls' room.  (*Id.*)  Based on these allegations, Petitioner was charged in 2013 with various counts of child molestation in violation of Arizona law.  (*Id.*)

In July 2016, Petitioner's first trial began.  (Doc. 11-1 at 12.)  Petitioner contends, and Respondents do not seem to dispute, that the prosecution "assumed the burden of establishing sexual interest" during the first trial.  (Doc. 22 at 7.)  The first trial "ended without verdicts because J.C. triggered a mistrial by testifying that [Petitioner] had not touched her vagina just once, as the indictment alleged, but rather three times between her sixth and ninth birthdays."  (Doc. 11-1 at 12-13.)

In September 2016, while the charges against Petitioner were still pending, the Arizona Supreme Court decided *State v. Holle*, 379 P.3d 197 (Ariz. 2016).  The disputed issue in *Holle* was whether a lack of sexual motivation is an *element* of the crimes of sexual abuse and child molestation under Arizona law (as the defendant argued) or whether a lack of sexual motivation is an *affirmative defense* to those crimes (as the government argued).  In a 3-2 decision, the Arizona Supreme Court ruled in the government's favor, holding that "lack of such motivation is an affirmative defense that a defendant must prove, and thus the state need not prove as an element of those crimes that a defendant's conduct was motivated by a sexual interest."  *Id.* at 198.  The defendant in *Holle* also argued, in the alternative, that "shifting the burden to defendants by making the lack of such motivation an affirmative defense . . . violates due process," but the court rejected that argument, too.  *Id.* at 205-06.

1    In June 2017, Petitioner filed a motion to dismiss the charges against him, raising
2  the same due process argument the Arizona Supreme Court had rejected in *Holle*. (Doc.
3  1-8.) The trial court denied the motion. (Doc. 1-9 ["The Defendant's motion to dismiss is
4  denied. This Court is bound by the Arizona Supreme Court case of [*Holle*]. Moreover,
5  even if the statute does unconstitutionally shift the burden of proof to the Defendant,
6  dismissal is not an appropriate remedy. The Court could instruct the jury that the State has
7  the burden of proving sexual motivation."].)

8    In December 2017, Petitioner's retrial began. (Doc. 11 at 9.) Petitioner testified
9  and sought to raise the affirmative defense of lack of sexual interest. (Doc. 19 at 2.)
10 Specifically, Petitioner admitted that he had washed the girls' genitals with soap and his
11 bare hand but denied that he had any sexual interest in doing so. (*Id.*) The trial court, in
12 turn, instructed the jury that Petitioner had to prove lack of sexual interest by a
13 preponderance of the evidence. (*Id.*) The jury ultimately convicted Petitioner of three
14 counts of child molestation involving victims A.G. and J.C. but returned not-guilty verdicts
15 for the charges involving Y.L. (*Id.*)

16    On January 23, 2018, sentencing took place. (Doc. 11 at 9.) Petitioner was
17 sentenced to concurrent 17-year prison terms, followed by another 17-year term, for a total
18 of 34 years. (Doc. 19 at 2-3.)

19 II.    <u>Intervening Developments</u>

20    As Petitioner's case was unfolding, two additional developments (the potential
21 significance of which is discussed in later portions of this order) occurred.

22    A.    ***May v. Ryan***

23    The first development occurred in March 2017, when another judge of this Court
24 decided *May v. Ryan*, 245 F. Supp. 1145 (D. Ariz. 2017). *May* involved a petition for
25 habeas corpus filed by an Arizona prisoner who had been convicted of child molestation
26 in 2007 following a trial in which the jury was instructed that "the defendant has the burden
27 of proving his own lack of sexual intent by a preponderance of the evidence." *Id.* at 1150-
28 51. Unlike here, the petitioner in *May* did not raise any constitutional challenges to this

instruction at trial or during his direct appeal. *Id.* at 1151-52. Instead, the petitioner first argued in a petition for post-conviction relief ("PCR") that his trial counsel had been ineffective by failing to raise a constitutional challenge. *Id.* "The superior court denied relief because of procedural default without deciding the merits of the constitutional claim and the state appellate court affirmed." *Id.*

In *May*, the district court acknowledged that "[b]ecause May failed to preserve the constitutional question at trial, this Court can reach the merits only if there was cause and prejudice for his default." *Id.* at 1156. However, the court did not begin its analysis by addressing those issues—instead, it explained that because the resolution of the resulting prejudice inquiries would "depend[] largely on the strength of the defaulted federal constitutional objection," "[i]t therefore makes sense to discuss the law's constitutionality at the outset." *Id.* at 1156-57. Turning to the merits of the constitutional claim, the district court provided an exhaustive analysis before concluding that "the burden-shifting scheme of Arizona's child molestation law violates the Fourteenth Amendment's guarantees of due process and of proof of guilt beyond a reasonable doubt." *Id.* at 1157-65. In part, this analysis turned on the court's observation that only one other state followed Arizona's approach. *Id.* at 1160 ("Today the statutes or case law of 48 out of 50 states . . . require some sexual purpose for the crime of child molestation."). Next, the district court addressed whether the petitioner was prejudiced by his counsel's failure to raise a constitutional challenge, concluding for various reasons that prejudice existed. *Id.* at 1165-69. Finally, the district court addressed whether the petitioner's trial counsel engaged in deficient performance by failing to raise the constitutional challenge, concluding that counsel had because "[i]t should have been obvious that the burden-shifting scheme presented a serious constitutional question that could have been dispositive for May. At the time, there was no appellate case assessing the constitutionality of Arizona's 1997 statutory amendment. Even if there had been a case on point, the constitutional question was a matter of federal law amenable to vindication in later federal court review. [Counsel] performed deficiently by failing to recognize and act on this." *Id.* at 1169-71. Thus, the

district court held that the petitioner was entitled to habeas relief.  *Id.* at 1171-72.

In March 2020, the Ninth Circuit issued a memorandum decision reversing the district court's grant of habeas relief.  *May v. Ryan*, 807 F. App'x 632 (9th Cir. 2020).  The Ninth Circuit only addressed, on the merits, the district court's analysis with respect to deficient performance, concluding "that May's trial counsel was not ineffective for failing to object to the constitutionality of the child molestation statute.  Given the long-standing Arizona rule that the State is not required to prove sexual intent to successfully prosecute a defendant for child molestation, which provided the background for the 'prevailing professional practice at the time of the trial,' we cannot conclude that trial counsel's failure to object to the constitutionality of the statute's placing the burden of proving lack of intent on the defendant 'fell below an objective standard of reasonableness.'"  *Id.* at 634-35 (citations omitted).  The court also went out of its way to "vacate" the portion of the district court's decision analyzing the constitutionality of Arizona's child molestation statute: "Because we do not reach the constitutionality of the Arizona child molestation statute, we vacate the district court's judgment in that respect."  *Id.* at 635.

### B.   **2018 Amendment**

The other development occurred in August 2018, when the Arizona legislature "amended the child molestation statutes."  *State v. Bieganski*, 2019 WL 4159822, *1 n.1 (Ariz. Ct. App. 2019).  Among other things, "[t]he amendment eliminated the affirmative defense of lack of sexual motivation" and "included a definition of '[s]exual contact' . . . [that] '[d]oes not include direct or indirect touching or manipulating during caretaking responsibilities, or interactions with a minor or vulnerable adult that an objective, reasonable person would recognize as normal and reasonable under the circumstances.'"  *Id.* (citations omitted).

### III.   Direct Appeal

In December 2018, Plaintiff filed his opening brief in his direct appeal from his convictions and sentences.  (Doc. 1-2.)  As relevant here, Petitioner asserted (1) a Fourteenth Amendment due process claim, under the theory that Arizona improperly

1   shifted the burden of proof onto him to disprove the implicit "sexual motivation" element

2   of the offense; and (2) a claim that the child molestation statutes were unconstitutional "as

3   applied" to him.  (Doc. 19 at 3.)

4        In an unpublished decision issued on September 3, 2019, the Arizona Court of

5   Appeals unanimously rejected these arguments and affirmed.  *State v. Bieganski*, 2019 WL

6   4159822 (Ariz. Ct. App. 2019).  As for the due process challenge, the court's analysis was

7   as follows:

8        Relying on the federal district court's rationale in *May*, [Petitioner] argues
9        that the child molestation statutes violate due process because they shift the
     burden of proof to the defendant regarding the issue of sexual motivation.
10       Our supreme court expressly rejected this argument in [*Holle*].

11       We are required to follow our supreme court's decisions.  While we consider
12       the opinions of the lower federal courts regarding the interpretation of the
     Constitution, such authority is not controlling on Arizona courts.
13       Accordingly, no error occurred, and we will not reexamine our supreme
14       court's decision in [*Holle*].

15   *Id.* at *2 (citations omitted).  The court also rejected Petitioner's "as applied" challenge,
16   reasoning as follows:
17

18       [Petitioner] also contends that the statutes are unconstitutional "as applied"
     to him.  To support his contention, [Petitioner] relies on the discussion in
19       [*Holle*] concerning the possibility of an "as applied" constitutional challenge
     for a parent performing a caregiving task such as changing diapers.
20

21       The "as applied" discussion in [*Holle*] occurred in a theoretical context and
     was not involved in the holding.  The supreme court found that because the
22       defendant's actions were "clearly inappropriate," they could not be construed
     as parenting or caregiving in any manner, and thus, the court did not address
23       the issue further.  [Petitioner's] "as applied" argument fails for the same
     factual and legal reasons.
24

25       The evidence, including [Petitioner's] testimony and admissions, established
26       that [Petitioner] performed the barehanded washing of each minor victim's
     genitals with no other adult present during a rushed Sunday morning bathing
27       "assembly line" practice for which he did not provide a logical "parental"
     explanation.  He conducted these washing practices even though the girls
28       were old enough to bathe themselves.  [Petitioner] never requested

- 6 -

permission from any of the parents or guardians to participate personally in the bathing or manual genital washing of the girls, and never discussed the bathing practices the girls would be exposed to with him. [Petitioner's] wife helped provide care for the girls but did not wash the girls' genitals and was not involved in the "assembly line." She provided each girl with a washrag and soap and directed them to clean themselves. Although [Petitioner] later admitted to the jury that he performed the "washing" acts, when interviewed by law enforcement on the day of his arrest, he denied that the acts occurred, both to the officers and his wife during a phone call.

The jury rejected his efforts at establishing an affirmative defense based upon the evidence presented. The evidence supports the jury's determination that [Petitioner's] practices and acts maintain no reasonable connection to a legitimate parental exception as hypothetically contemplated in [*Holle*]. Hence, there was no error.

*Id.* at *3-4 (citations omitted).

On March 31, 2020, the Arizona Supreme Court denied Petitioner's petition for review. (Doc. 1-6.)

On October 5, 2020, the United States Supreme Court denied Petitioner's petition for a writ of certiorari. (Doc. 19 at 3.)

IV.   This Action

On September 30, 2021, Petitioner initiated this action. (Doc. 1.) The Court previously explained that the petition raises one ground for relief—namely, "that the statute under which [Petitioner] was convicted violates his due process rights because it improperly shifts the burden on an element of the offense from the prosecution to the accused." (Doc. 3 at 2.)

V.   The R&R

The R&R concludes that the petition, although timely filed, should be denied and dismissed with prejudice. (Doc. 19.) As an initial matter, the R&R states that Petitioner's claim is subject to the deferential form of review authorized by 28 U.S.C. § 2254(d) because the Arizona Court of Appeals considered and rejected his due process claim on the merits during his direct appeal. (*Id.* at 4-5.)

The R&R explains that, under § 2254(d), "Petitioner must demonstrate the state

court's order was contrary to, or an unreasonable application of, clearly established federal law or based on an unreasonable determination of the facts." (*Id.* at 5.) The R&R concludes that Petitioner cannot satisfy this standard. The upshot of the R&R's analysis is that "Petitioner fails to cite United States Supreme Court precedent indicating that due process requires a state to include an element of motivation by sexual interest in child molestation statutes. Indeed, the United States Supreme Court has given states wide latitude to define offenses including the required scienter." (*Id.* at 10.) Elsewhere, the R&R notes that "Petitioner fails to cite any case from the United States Supreme Court that a state violates due process by shifting the burden to the defendant on an 'inherent' element derived from older iterations of a statute or general notions of what separates innocent conduct from criminal conduct," and thus Petitioner "has not shown the Arizona Court of Appeals unreasonably applied any clearly established United States Supreme Court precedent in denying his due process challenge to the child molestation statutes under which he was convicted." (*Id.* at 11.) The R&R also concludes that, to the extent Petitioner relies on the district court's decision in *May*, that reliance is misplaced for three reasons: (1) the Ninth Circuit subsequently reversed *May* on other grounds without "reach[ing] the constitutionality of the Arizona child molestation statute and thus vacated the district court's judgment in that respect"; (2) "after the Ninth Circuit reversed *May v. Ryan*, no habeas petitioner has been granted relief on the theories Petitioner advances here"; and (3) *May*'s analysis was incorrect. (*Id.* at 6-10.) Finally, as for Petitioner's "as applied" theory, the R&R states that the Arizona Court of Appeals' rejection of that theory "was not an unreasonable conclusion" because "Petitioner does not show the court reached its conclusion based on more instances of abuse than were proven . . . or otherwise misinterpreted the facts." (*Id.* at 11-12.)

## LEGAL STANDARD

A party may file written objections to an R&R within 14 days of being served with a copy of it. Rules Governing Section 2254 Cases 8(b) ("Section 2254 Rules"). Those objections must be "specific." *See* Fed. R. Civ. P. 72(b)(2) ("Within 14 days after being

served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.").

"The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to.  The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  *See* Fed. R. Civ. P. 72(b)(3).  "In providing for a de novo determination . . . Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations. . . .  [D]istrict courts conduct proper de novo review where they state they have done so, even if the order fails to specifically address a party's objections." *United States v. Ramos*, 65 F.4th 427, 433 (9th Cir. 2023) (citations and internal quotation marks omitted).  *See also id.* at 434 ("[T]he district court ha[s] no obligation to provide individualized analysis of each objection.").

Additionally, district courts are not required to review any portion of an R&R to which no specific objection has been made.  *See, e.g., Thomas v. Arn*, 474 U.S. 140, 149-50 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings."); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) ("[T]he district judge must review the magistrate judge's findings and recommendations de novo if objection is made, but not otherwise.").  Thus, district judges need not review an objection to an R&R that is general and non-specific.  *See, e.g., Warling v. Ryan*, 2013 WL 5276367, *2 (D. Ariz. 2013) ("Because de novo review of an entire R & R would defeat the efficiencies intended by Congress, a general objection 'has the same effect as would a failure to object.'") (citations omitted); *Haley v. Stewart*, 2006 WL 1980649, *2 (D. Ariz. 2006) ("[G]eneral objections to an R & R are tantamount to no objection at all.").

…

…

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ANALYSIS**

Having carefully reviewed the R&R, Petitioner's oversized objections, Respondents' response to those objections, and Petitioner's court-authorized sur-reply, the Court concludes that Petitioner's objections (which the Court has reviewed *de novo*)[1] lack merit, except for the final objection concerning the denial of a COA.

1.      Petitioner's first objection concerns the R&R's determination that he "has not shown the state court's decision was contrary to, or unreasonably applied, clearly established federal law." (Doc. 22 at 6-11.)  In support of this objection, Petitioner reasserts the merits-based arguments he presented to Judge Morrissey; reasserts his contention that *May* was correctly decided; contends that the R&R improperly construed § 2254(d) as requiring him "to identify Supreme Court precedent that is factually identical to the current case," even though "the governing law does not have to be based on the same or similar facts"; contends that the R&R also "conflate[d]" the "distinct standards" set forth in § 2254(d); and contends that the R&R misconstrued *Smith v. United States*, 568 U.S. 106 (2013), and failed to analyze several of the Supreme Court cases he previously identified as supporting his position, including *Morissette v. United States*, 342 U.S. 246 (1952), *United States v. X-Citement Video, Inc.*, 513 U.S. 64 (1994), and *Staples v. United States*, 511 U.S. 600 (1994).  (*Id.*)

In response, Respondents argue that the R&R applied the correct standard, did not overlook any relevant Supreme Court precedent, and properly addressed *May*.  (Doc. 25 at 3-6.)  In a footnote, Respondents add: "The offense of child molestation, which requires the State to simply prove the knowing touching of a child's intimate areas notwithstanding

---

[1]      Respondents fault Petitioner for "repeat[ing] arguments from his Memorandum and Reply" and contend that "[s]uch general objections and repeated arguments are insufficient under Rule 72 and do not trigger the de novo review requirement."  (Doc. 25 at 3.)  In reply, Petitioner contends that "[a]ny general objections or duplication was included to avoid possible claims of waiver . . . [and] to put Petitioner's objections into context and to provide this Court with a more comprehensive introduction to this case.  To the extent that they do not identify specific objections to the R&R, Petitioner submits that they may be viewed as surplusage and their inclusion should not detract from Petitioner's many specific objections."  (Doc. 30 at 1.)  The Court appreciates the clarification and confirms that it has reviewed *de novo* the five specific objections raised by Petitioner.

a potentially innocent motive, is analogous to the offense of assault, which simply requires the State to prove reckless, knowing, or intentional injury of some kind notwithstanding a potentially innocent or even noble motive, e.g., a doctor performing lifesaving surgery on an unconscious individual.  Accordingly, the offense does not inquire into an individual's motivation for such contact." (Doc. 25 at 5 n.1.)

In reply, Petitioner reiterates some of his earlier criticisms of the R&R's reasoning, reiterates his arguments regarding the relevance of *Morissette*, questions Respondents' analogy to the crime of assault, and argues that subsequent legislative developments further support his position.  (Doc. 30 at 1-2, 6.)

Petitioner's first objection is unavailing.  In *Smith*, the Supreme Court articulated the relevant standard for assessing the due process implications of placing the burden of proof on a criminal defendant to prove an affirmative defense:

> While the Government must prove beyond a reasonable doubt every fact necessary to constitute the crime with which the defendant is charged, proof of the nonexistence of all affirmative defenses has never been constitutionally required.  The State is foreclosed from shifting the burden of proof to the defendant only when an affirmative defense does negate an element of the crime.  Where instead it excuses conduct that would otherwise be punishable, but does not controvert any of the elements of the offense itself, the Government has no constitutional duty to overcome the defense beyond a reasonable doubt.

*Smith*, 568 U.S. at 110 (cleaned up).  In *Holle*—whose logic is relevant here because, as discussed in more detail below in relation to objection three, the Arizona Court of Appeals incorporated it by reference when rejecting Petitioner's due process claim—the Arizona Supreme Court recognized that *Smith* provided the relevant standard for evaluating a due process challenge to Arizona's then-applicable rule characterizing a lack of motivation by sexual interest as an affirmative defense to the crime of child molestation.  *Holle*, 379 P.3d at 205.  Thus, to the extent Petitioner's argument is that the decision in his case was "contrary to . . . clearly established federal law," that argument is easily rejected—the Arizona courts identified the correct legal standard established by the United States

Supreme Court.  *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) ("[A] state court decision is contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.") (citations and internal quotation marks omitted).

Petitioner also contends that the Arizona courts applied the clearly established law in an unreasonable way, because "lack of sexual intent does not excuse conduct that would otherwise be punishable. . . .  [B]athing or diapering a child is not wrongful and would not be punishable without sexual intent."  (Doc. 22 at 10-11.)  This argument, which dovetails with Petitioner's second objection (*id.* at 12-13), implicates the "unreasonable application" clause of § 2254(d)(1).  *Lockyer*, 538 U.S. at 74 ("[U]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.") (citations omitted).  As the Supreme Court has emphasized, "[t]he 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous.  The state court's application of clearly established law must be objectively unreasonable."  *Id.* at 75.  *See also id.* at 75-76 ("It is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court was erroneous. . . .  Rather, that application must be objectively unreasonable.") (cleaned up).

In assessing whether *Holle*'s application of the *Smith* standard (including *Holle*'s determination that motivation by sexual interest is not an element of child molestation) was objectively unreasonable, it is helpful to begin by summarizing the relevant portions of the court's analysis.  The court began by considering the historical development of Arizona's child molestation statute and by engaging in various forms of statutory interpretation, concluding based on that analysis that the intent of the Arizona legislature when enacting the then-current version of the child molestation statute was, indeed, to criminalize intentional and knowing "sexual contact" irrespective of whether the contact was motivated

by sexual interest.  379 P.3d at 199-205.  *See also id.* at 204 (discussing "the legislature's purposeful decision to make lack of sexual motivation an affirmative defense").  Next, the court explained that, as a separation-of-powers matter, it owed deference to the legislature's chosen approach, because "States have broad authority to define the elements of a crime" and "proscribing certain conduct and defining what constitutes a crime and any defense thereto are solely within the purview of the political branches of government, not the courts." *Id.* at 205-06.  The court acknowledged that, as least as a "hypothetical" matter, the "absen[ce of] a sexual motivation element . . . [might] lead to absurd prosecutions," but it held that such hypothetical considerations did "not warrant ignoring the plain language of the subject statutes." *Id.* at 206.  Finally, in light of these determinations, the court concluded that the legislature's chosen approach was not invalid as a matter of due process under the standard set forth in *Smith* and other Supreme Court decisions applying the same standard.  *Id.* at 205-06.

Petitioner has not established that these conclusions were objectively unreasonable.  Conspicuously absent from Petitioner's briefing is any non-vacated decision by any court holding that sexual motivation is necessarily an element of the crime of child molestation and that a state legislature would violate the Fourteenth Amendment if it sought to define the crime in a different and more expansive manner.  Although the absence of such authority is not dispositive,[2] it still counsels against finding that the Arizona courts' conclusions on that topic were objectively unreasonable for AEPDA purposes.  *Cf. Sansing v. Ryan*, 41 F.4th 1039, 1063-64 (9th Cir. 2022) (concluding that habeas petitioner's contention "that the Arizona Supreme Court's decision involved an unreasonable application of the Supreme Court's Eighth Amendment precedent" was "precluded under 28 U.S.C. § 2254(d)(1)" in part because "to our knowledge, no court has adopted

---

[2]    *Panetti v. Quarterman*, 551 U.S. 930, 953 (2007) (noting that "AEDPA does not require state and federal courts to wait for some nearly identical factual pattern before a legal rule must be applied" and does not "prohibit a federal court from finding an application of a principle unreasonable when it involves a set of facts different from those of the case in which the principle was announced") (citations and internal quotation marks omitted).

[Sansing's proposed] interpretation of the Eighth Amendment").

The Court acknowledges that Petitioner has identified, and the district court in *May* further identified, an array of intuitively appealing reasons why a state legislature might choose to define the crime of child molestation as requiring proof of sexual motivation. Nevertheless, the Arizona Supreme Court provided a thorough explanation—which included an exhaustive summary of the development of Arizona law and consideration of various techniques of statutory construction—in support of its conclusion that the Arizona legislature had chosen to follow a different approach and that the chosen approach did not violate the due process standard set forth in *Smith* and related cases. The Court cannot say that this analysis was objectively unreasonable in the manner than AEPDA requires, particularly in light of the leeway that state legislatures generally possess the define the conduct that is considered criminal under state law.

In a related vein, although the district court in *May* concluded in its since-vacated constitutional analysis that a 50-state survey (which showed that only one other state followed Arizona's approach) was a sign of the constitutional infirmity of Arizona's approach, *see May*, 245 F. Supp. 3d at 1160 & n.6, the Supreme Court has rejected similar arguments in other cases involving due process challenges to state-law affirmative defenses. *Martin v. Ohio*, 480 U.S. 228, 234-36 (1987) (upholding the Ohio courts' determination that self-defense was an affirmative defense to the crime of aggravated murder, because this was "an interpretation of state law that we are not in a position to dispute," and rejecting the defendant's due process challenge to this approach, even though "all but two of the States, Ohio and South Carolina, have abandoned the common-law rule and require the prosecution to prove the absence of self-defense when it is properly raised by the defendant," because "the question remains whether those States are in violation of the Constitution," "that question is not answered by cataloging the practices of other States," and "[w]e are no[t] convinced that the Ohio practice of requiring self-defense to be proved by the defendant is unconstitutional"). In the Court's view, it is significant that *Holle* repeatedly cited *Martin* as one of the cases supporting its rejection of the due process

challenge. *Holle*, 379 P.3d at 205. Although Petitioner has identified reasons why he views *Martin* as distinguishable (Doc. 18 at 20), the fact that the Arizona Supreme Court was able to identify an arguably-analogous United States Supreme Court precedent supporting its decision is alone a reason to conclude that § 2254(d)'s very high bar has not been satisfied here. *Metrish v. Lancaster*, 569 U.S. 351, 357-58 (2013) ("This standard, we have explained, is difficult to meet: To obtain habeas corpus relief from a federal court, a state prisoner must show that the challenged state-court ruling rested on an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.") (cleaned up).

The Court does not mean to suggest that the leeway state legislatures possess when defining the contours of state-law crimes is unlimited. As Petitioner notes (and as the district court in *May* emphasized), the Supreme Court has repeatedly recognized that "constitutional limits exist to States' authority to define away facts necessary to constitute a criminal offense." *Apprendi v. New Jersey*, 530 U.S. 466, 486 (2000). *See also Patterson v. New York*, 432 U.S. 197, 202, 210 (1977) (noting that although "it is normally within the power of the State to regulate procedures under which its laws are carried out, including the burden of producing evidence and the burden of persuasion," "there are obviously constitutional limits beyond which the States may not go in this regard") (citations and internal quotation marks omitted); *Schad v. Arizona*, 501 U.S. 624, 639 (1991) ("In the burden-shifting cases, . . . we have faced the difficulty of deciding, as an abstract matter, what elements an offense must comprise. Recognizing our inability to lay down any bright-line test, we have stressed that . . . the state legislature's definition of the elements of the offense is usually dispositive . . . although we recognize that . . . there are obviously constitutional limits beyond which the States may not go.") (cleaned up). But these observations are pitched at too high of a level of generality to establish that the specific conclusion reached by the Arizona courts in this case—again, that the crime of child molestation does not inherently require proof of sexual motivation, and thus a state legislature may, consistent with due process, denominate the absence of sexual motivation

1   as an affirmative defense for which the defendant bears the burden of proof—was not just

2   incorrect, but objectively unreasonable. *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)

3   ("[E]valuating whether a rule application was unreasonable requires considering the rule's

4   specificity.  The more general the rule, the more leeway courts have in reaching outcomes

5   in case-by-case determinations."); *Gibbs v. Covello*, 996 F.3d 596, 603 (9th Cir. 2021)

6   (emphasizing that, under *Yarborough*, state courts have "even more latitude" to decline to

7   find violations of "general" constitutional standards and rejecting habeas petitioners' claim

8   for relief, even though the merits of the constitutional claim presented a "close" call and

9   "if we were answering [that] question de novo, we might not reach the same conclusion as

10  the California Court of Appeal," because "AEDPA's deferential standard of review is

11  particularly important in this case") (citations omitted).

12          The other cases cited by Petitioner fail for similar reasons.  In some, courts

13  evaluated, under dissimilar circumstances, the due process implications of certain

14  affirmative defenses to other crimes.  *Mullaney v. Wilbur*, 421 U.S. 684, 687, 703 (1975)

15  (invalidating, on due process grounds, a provision of "Maine law requir[ing] a defendant

16  to establish by a preponderance of the evidence that he acted in the heat of passion on

17  sudden provocation in order to reduce murder to manslaughter," because "under Maine law

18  malice aforethought was an essential element of the crime of murder" and the challenged

19  requirement thus forced criminal defendants "to negate the element of malice

20  aforethought").  In others, courts generally noted the necessity and importance of intent

21  and scienter requirements.  *See, e.g.*, *Morissette v. United States*, 342 U.S. 246, 250 (1952)

22  (emphasizing, in the context of a prosecution for conversion of government property where

23  the defense was that the defendant believed the property had been abandoned, that "[t]he

24  contention that an injury can amount to a crime only when inflicted by intention is no

25  provincial or transient notion.  It is as universal and persistent in mature systems of law as

26  belief in freedom of the human will and a consequent ability and duty of the normal

27  individual to choose between good and evil.").[3]  Once again, such general observations fail

28  ────────────────
    [3]     The Court notes that *Holle* did not purport to eliminate the requirement that the state
    prove the element of intent in a child molestation prosecution—it simply defined the

- 16 -

to establish that the challenged decision here was not simply wrong, but an objectively unreasonable application of clearly established federal law.

Finally, although Petitioner places heavy emphasis on the fact that the Arizona legislature amended Arizona's child molestation statutes in 2018 to eliminate the challenged features at issue in this case, the Court does not see how this development changes the § 2254(d) analysis. There is no evidence that the legislature made this decision because it belatedly came to recognize that "the long-standing Arizona rule" it was displacing, *May*, 807 F. App'x at 634, was somehow unconstitutional in light of the federal due process standards handed down by the United States Supreme Court. To the contrary, Plaintiff's proffered evidence suggests, if anything, that the change was prompted by public policy considerations. (Doc. 22 at 23.) And even if the Arizona legislature had, in theory, been motivated to act based on constitutional concerns, this still would not demonstrate— for all of the reasons discussed in this order—that the Arizona courts' contrary resolution of those constitutional concerns reflected an objectively unreasonable application of clearly established federal law.

2.      Petitioner's second objection is to the R&R's determination that "it was not objectively unreasonable for the Arizona Court of Appeals to conclude that sexual intent is not an element of the crime of Arizona's child molestation statutes and thus the affirmative defense did not negate any element of the offense." (Doc. 22 at 12-13.) In response, Respondents contend that this objection is deficient under Rule 72 because it "contains no specific objections to the R&R." (Doc. 25 at 6 n.2.) In reply, Petitioner disagrees and contends that his second objection was sufficient. (Doc. 30 at 3-4.)

Even assuming that Petitioner's second objection was sufficient for Rule 72 purposes, and further assuming that this objection (to the extent it seeks to challenge the

---

required intent as the intent to engage in the challenged act of touching, irrespective of sexual motivation. *Holle*, 379 P.3d at 204 ("[V]iewing sexual motivation as an element of child molestation or sexual abuse would obligate the state to prove additional aspects of a defendant's mental state beyond the mental states ('intentionally or knowingly') that are statutorily defined and expressly required."). *See also id.* at 200-01 ("noting that "§§ 13–1404(A) and 13–1410(A) require the state to prove that the defendant 'intentionally' or 'knowingly' engaged in 'sexual contact' with certain aged children").

1   Arizona courts' interpretation of state law) is properly raised in a habeas corpus

2   proceeding, the Court concludes that it fails for the reasons described at length above in

3   relation to Petitioner's first objection.

4          3.     Petitioner's third objection is to the R&R's "rejection of his claim that this

5   Court should review *de novo* the molestation statutes because no state court reviewed

6   Petitioner's claim on the merits." (Doc. 22 at 13-14.)  More specifically, Petitioner argues

7   that (1) Respondents' counter-arguments on this point should have been deemed waived,

8   because those counter-arguments were only raised in a footnote of their response to the

9   petition; and (2) irrespective of waiver, the Arizona Court of Appeals' cross-reference to

10  *Holle* in his case was insufficient to qualify as a merits review because "the actual holding

11  [of *Holle*] did not mention due process."  (*Id.*)

12         In response, Respondents argue that (1) "even were it possible for Respondents to

13  'waive' application of § 2254(d) by arguing the issue in a footnote—given that the state

14  court's merits decision is plain on the face of the record—no waiver occurred because

15  Respondents did not passingly mention the issue in a footnote . . . [but] provided

16  substantive argument"; and (2) "the court of appeals' decision was on the merits" because

17  it expressly rejected Petitioner's due process argument based on *Holle*. (Doc. 25 at 6-8.)

18  Additionally, Respondents argue that *Holle*'s due process discussion was not dicta.  (*Id.*)

19         Petitioner's third objection lacks merit.  Petitioner cites no authority in support of

20  the proposition that a state can "waive" the application of § 2254(d) via an omission in a

21  response to a habeas petition and Respondents took sufficient steps, at any rate, to raise the

22  issue in their response to the petition.  (Doc. 11 at 26 n.14.)  On the merits, the Arizona

23  Court of Appeals expressly noted, in its decision in Petitioner's case, that it was rejecting

24  Petitioner's due process challenge for the reasons stated in *Holle*.  *Bieganski*, 2019 WL

25  4159822 at *2 ("Bieganski argues that the child molestation statutes violate due process

26  because they shift the burden of proof to the defendant regarding the issue of sexual

27  motivation.  Our supreme court expressly rejected this argument in [*Holle*].  We are

28  required to follow our supreme court's decisions. . . .  Accordingly, no error occurred, and

we will not reexamine our supreme court's decision in [*Holle*].") (citations omitted).  This

qualifies as adjudication on the merits in Petitioner's case, irrespective of whether *Holle*'s

earlier discussion might be characterized as dicta.  *Echavarria v. Filson*, 896 F.3d 1118,

1129 (9th Cir. 2018) ("An adjudication on the merits is a decision finally resolving the

parties' claims . . . that is based on the substance of the claim advanced . . . .  [If] a state

court gives an explicit explanation of its own decision, we take the state court at its word.")

(cleaned up).

        4.      Petitioner's fourth objection is to the "the Magistrate's presumption that the

state court's recounting of the facts is correct and recommendation that Petitioner has not

shown that the Arizona Court of Appeals misconstrued or unreasonably determined the

facts in light of the evidence presented in state court."  (Doc. 22 at 14-20, capitalization

omitted.)  More specifically, Petitioner first takes issue with the statement in the Arizona

Court of Appeals' decision that he "did not provide a logical 'parental' explanation" for

the assembly-line bathing practice, arguing that this factual determination was

unreasonable because there was evidence that the practice was necessary to get the girls

ready for church while Petitioner's wife was occupied with other matters.  (*Id.* at 15-16.)

Next, Petitioner takes issue with the statement that the genital contact "primarily" occurred

during the bathing practice, arguing that "the only contact for which he was convicted

involved the bathing practice."  (*Id.* at 16.)  In a related vein, Petitioner objects to the

references in the R&R to the allegations of non-bath touching that were made by Y.L.,

arguing that those references should have been excluded because he was acquitted of the

counts related to Y.L.  (*Id.* at 16-17.)  Next, Petitioner takes issue with the statement in the

Arizona Court of Appeals' decision that "the girls were old enough to bathe themselves,"

arguing that this statement is belied by the record because many of the girls came from

troubled backgrounds and some of the girls were referring to baths that occurred years

before their interviews.  (*Id.* at 17-19.)  Next, Petitioner takes issue with the assertion that

he initially "denied that the acts occurred," arguing that he was simply describing the

bathing policy that was in effect at the time of the questioning (under which the girls were

responsible for washing their own private parts) and not the previous bathing policy.  (*Id.* at 19.)  Finally, Petitioner takes issue with the assertion that he "never requested permission from any of the parents or guardians to participate personally in the bathing or manual genital washing of the girls, and never discussed the bathing practices the girls would be exposed to with him," arguing that this assertion is misleading because "none of the children's parents or the State of Arizona ever asked Petitioner about his hygiene plan for the girls in their care." (*Id.* at 19-20.)  Notably, Petitioner does not identify any specific legal conclusion in the R&R that was affected by these purported factual errors—instead, he simply contends, without elaboration, that these errors cause him to object to the R&R's ultimate recommendation that his petition be denied and to the R&R's recommendation that an evidentiary hearing be denied.  (*Id.* at 21.)

In response, Respondents begin by noting that that, under AEPDA, factual determinations by the state court are presumed correct and Petitioner bears the burden of rebutting this presumption by clear and convincing evidence.  (Doc. 25 at 8-9.)  Given this standard, Respondents argue that all of Petitioner's individual challenges fail.  More specifically, as for the finding of "no logical parental explanation" for the assembly-line baths, Respondents argue this finding was reasonable in light of Petitioner's wife's testimony that she provided the girls with rags and soap and directed them to clean themselves.  (*Id.* at 9-10.)  As for the references to Y.L., Respondents argue they were appropriate because they were simply provided for the purpose of fully summarizing the allegations against Petitioner and note that both the appellate decision and the R&R clarify that Petitioner was acquitted of those particular charges.  (*Id.* at 10-11.)  As for the assertion that Petitioner denied ever touching the girls, Respondents argue it was a reasonable interpretation of the facts in light of Petitioner's unqualified denials that he had ever touched certain girls' private parts.  (*Id.* at 11.)  Finally, as for the assertion regarding the lack of permission from the girls' parents, Respondents note that Petitioner does not deny the literal accuracy of this assertion: "[T]he fact that he was not asked about his bathing practices does not disprove the court's statement that he never disclosed them to the girls'

parents or guardians." (*Id.* at 11-12.)

In reply, Petitioner does not address many of Respondents' arguments. (Doc. 30 at 4-5.) He does, however, note that he provided an explanation for his practice of bare-handed bathing (*i.e.*, fear of bacteria) and suggests that he "denied *inappropriately* touching anyone" during the challenged statements to his wife and law enforcement. (*Id.*, emphasis added.)

Petitioner's fourth objection lacks merit. First, the Court agrees with all of Respondents' arguments as to why Petitioner has failed to meet his heavy burden of demonstrating that the challenged factual determinations were unreasonable. In some cases, Petitioner does not even dispute that the accuracy of the challenged statements—he simply attempts to provide a benign explanation for them. Second, and separately, Petitioner fails to explain why, even if the Court were to conclude that one or more of the challenged factual statements was unreasonably inaccurate, such a determination would entitle him to habeas relief.

5. Petitioner's final objection is to the R&R's recommendation that a COA and leave to appeal *in forma pauperis* be denied. (Doc. 22 at 20-24.) Petitioner contends that he has satisfied the "modest" and "relatively low" standard for the issuance of these forms of relief because "[j]urists of reason could debate each and every issue presented by this habeas petition. Indeed, a number of prominent jurists—including a member of this Court, a member of a Ninth Circuit panel, members of the Arizona Supreme Court, as well as members of the Arizona Court of Appeals—have all called into question the constitutionality of Arizona's burden-shifting scheme at issue in this case." (*Id.* at 21.) Petitioner also contends that he has made the necessary showing with respect to his various factual and other challenges to the as-applied ruling. (*Id.* at 24.)

In response, Respondents argue that a COA should be denied because "the question is not whether jurists would debate the constitutionality of the statute, but whether they would debate that the state court's findings were not contrary to clearly established federal law or that any facts were unreasonable. No clearly established federal law held that

1    Arizona's statute was unconstitutional.  Nor could reasonable jurists disagree with the

2    R&R's conclusion that the court of appeals' rejection of [Petitioner's] as-applied challenge

3    was not based on an unreasonable determination of the facts in light of the evidence

4    presented in the trial court."  (Doc. 25 at 12-13.)

5        In reply, Petitioner argues that Respondents' opposition to his COA request is based

6    on the false premise that "the specific law being challenged [has] to be identical to prior

7    Supreme Court precedent," when in fact "the Supreme Court's principles cited by

8    Petitioner, and addressed [in *May*], are fundamental and provide the controlling legal

9    standard regarding element-defining and burden-shifting."  (Doc. 30 at 4-5.)

10       The Court concludes that Plaintiff's request for a COA should be granted as to his

11   due process challenge (but not as to any of his other challenges, including his as-applied

12   and factual challenges).  A COA "may issue . . . only if the applicant has made a substantial

13   showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2). To satisfy this

14   standard, the applicant must show that "jurists of reason could disagree with the district

15   court's resolution of his constitutional claims or that jurists could conclude the issues

16   presented are adequate to deserve encouragement to proceed further."  *Miller-El v.*

17   *Cockrell*, 537 U.S. 322, 327 (2003).  "[T]his amounts to a modest standard . . . [and] we

18   must be careful to avoid conflating the standard for gaining permission to appeal with the

19   standard for obtaining a writ of habeas corpus."  *Silva v. Woodford*, 279 F.3d 825, 832-33

20   (9th Cir. 2002) (cleaned up).  Here, even though the Court has found that Petitioner is not

21   entitled to habeas relief on any of his claims, the Court also recognizes the possibility that

22   other judges could conclude that the issues presented in relation to the due process claim

23   are adequate to deserve encouragement to proceed further.

24       Finally, to the extent Petitioner requests leave to proceed *in forma pauperis* on

25   appeal, that request is denied.  Petitioner did not proceed in *forma pauperis* during these

26   proceedings, paid the filing fee, and is represented by counsel.  (Doc. 3 at 1; Doc. 6.)

27   Additionally, Petitioner has never submitted a financial affidavit.  Petitioner offers no

28   reasoned argument why in *forma pauperis status* should be allowed on appeal under these

circumstances.  *Cf.* 28 U.S.C. § 1915(a)(1) ("[A]ny court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor.").

Accordingly,

**IT IS ORDERED** that:

1.    Petitioner's objections to the R&R (Doc. 22) are **overruled**, except as to the issuance of a certificate of appealability ("COA") concerning Petitioner's due process claim.

2.    The R&R (Doc. 19) is **accepted**, except as to the denial of a COA concerning Petitioner's due process claim.

3.    The petition (Doc. 1) is **denied and dismissed with prejudice**.

4.    A COA is **granted** as to Petitioner's due process claim but **denied** as to any other claim, including Petitioner's as-applied and factual challenges.  Additionally, leave to proceed *in forma pauperis* on appeal is **denied.**

5.    The Clerk shall enter judgment accordingly and terminate this action.

Dated this 31st day of July, 2023.

Dominic W. Lanza
United States District Judge

- 23 -