**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Bradley Bieganski,

Petitioner,

v.

David Shinn, et al.,

Respondents.

No. CV-21-01684-PHX-DWL

**ORDER**

Pending before the Court is Petitioner Bradley Bieganski's "renewed motion to enforce the mandate." (Doc. 49.) For the reasons that follow, the motion is granted in part and denied in part—the Court now issues a conditional writ of habeas corpus under which Bieganski may be retried.

## BACKGROUND

Following a 2017 trial in Arizona state court, Bieganski was convicted of three counts of child molestation and sentenced to 34 years' imprisonment. *Bieganski v. Shinn*, 149 F.4th 1055, 1065-66 (9th Cir. 2025). At the time of Bieganski's trial, the law in Arizona was that the offense of child molestation "is complete when the child is knowingly or intentionally touched, because the crime of child molestation does not mention, imply, or require sexual motivation," although Arizona law also "provided an affirmative defense if the defendant could show by a preponderance of the evidence that he was not motivated by a sexual interest." *Id.* at 1060 (cleaned up).[1]

---

[1]   The law in Arizona is now different. *Id.* at 1060 n.1 ("In 2018, Arizona made significant changes to its affirmative defense to child molestation and the definition of

In his direct appeal to the Arizona Court of Appeals, Bieganski argued that these features of Arizona law "violate Due Process rights by impermissibly shifting the burden of proof to an accused to disprove the implicit 'sexual motivation' element of the offense of child molestation." *See State v. Bieganski*, 2018 WL 7360609, *1 (opening brief).  As a remedy, Bieganski argued that his "convictions, having been based upon violations of his fundamental Due Process rights, should be vacated and *a new trial conducted* that comports with the rights of Due Process." *Id.* at *2-3 (emphasis added).  *See also State v. Bieganski*, 2019 WL 2744906, *13 (reply brief: "It simply cannot be reasonably disputed that in removing the long-recognized essential stigmatizing element of sexual interest from the crime of child molestation, the Legislature unconstitutionally reallocated the only element in the Anglo-American legal system, including in Arizona, that makes the difference between guilt and innocence of child molestation.  The Legislature impermissibly shifted the burden of persuasion on the essential element making child molestation a crime from the State to Mr. Bieganski.  He was thus presumed guilty and unconstitutionally deprived of his Due Process rights.  *Mr. Bieganski's convictions should be overturned and a new trial comporting with Due Process provided*.") (emphasis added).

After the Arizona courts denied relief, Bieganski initiated this habeas corpus action under 28 U.S.C. § 2254.  In Ground One of his petition, Bieganski reiterated his argument that his "convictions violate his federal constitutional right to due process and a fair trial because Arizona's child molestation statutes . . . are unconstitutional on their face, and as applied, where they require the defendant, who is actually innocent, to prove that any touching lacked sexual motivation, thereby relieving the State of its burden to prove each essential element beyond a reasonable doubt . . . ." (Doc. 1 at 6.)  In a supporting memorandum, Bieganski once again stated that a new trial would be a permissible remedy, albeit not his preferred remedy: "[T]he Court should vacate Petitioner Bradley Bieganski's convictions and sentence, and dismiss the indictment; *or, in the alternative, grant a new trial* or a hearing; and grant such other and further relief as is just under all the 'sexual contact.'").

- 2 -

circumstances." (Doc. 1-10 at 41, emphasis added.)[2]

In July 2023, this Court denied habeas relief but granted a certificate of appealability as to Ground One. (Doc. 31.) Bieganski then appealed to the Ninth Circuit. (Doc. 33.) In his opening brief, Bieganski argued that the appellate court should "vacate [his] conviction" but offered no argument about whether a retrial would be permissible following vacatur or whether the requested writ of habeas corpus should be conditional or unconditional. *Bieganski v. Thornell*, No. 23-1982, Dkt. 17 at 49. Respondents, likewise, did not address those remedial issues in their answering brief—they only argued that the denial of Bieganski's habeas petition should be affirmed. *Bieganski v. Thornell*, No. 23-1982, Dkt. 28. Nor did Bieganski touch on those remedial issues in his reply brief. *Bieganski v. Thornell*, No. 23-1982, Dkt. 39 at 19.

On August 12, 2025, the Ninth Circuit reversed. The court "beg[a]n with a candid observation: as a matter of form, the Arizona Supreme Court is correct that Arizona's child molestation scheme does not shift the burden of proof from the state to the defendant. Therefore, solely as a matter of form, we can find no fault in the court's decision—much less that the decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *Bieganski*, 149 F.4th at 1073. However, the court then conducted a review of "several Supreme Court cases" addressing whether a criminal conviction was tainted by impermissible burden-shifting. *Id.* at 1078-80. As part of that analysis, the court identified three Supreme Court cases in which a criminal conviction was overturned on this basis: *Mullaney v. Wilbur*, 421 U.S. 684 (1975), *Tot v. United States*, 319 U.S. 463 (1943), and

---

[2] During subsequent filings in this Court, Bieganski again identified a new trial as a permissible remedy. (Doc. 18 at 31 [reply in support of petition: "[T]he Court should vacate Petitioner Bradley Bieganski's convictions and sentence, and dismiss the indictment; or, in the alternative, grant a new trial or a hearing; and grant such other and further relief as is just under all the circumstances."]; Doc. 22 at 29 [objection to the magistrate judge's report and recommendation: "The Court, in its *de novo* review, should disagree with the Magistrate's Report and vacate Petitioner's convictions and sentence, and dismiss the indictment; or, in the alternative, grant a new trial or a hearing; and grant such other and further relief as is just under all the circumstances."].)

*Morrison v. California*, 291 U.S. 82 (1934).[3]  The court explained that "[t]hese cases clearly establish that the state is responsible for proving beyond a reasonable doubt the *critical* facts that establish the crime."  *Bieganski*, 149 F.4th at 1080.  The court concluded that "once we pierce the form of the state's scheme, we have little difficulty concluding that Arizona has shifted the burden of proof from the state to the defendant to prove a core element of child molestation—that the defendant touched the child's private parts with some kind of sexual interest.  Arizona has done so in violation of the Due Process Clause of the Fourteenth Amendment, as clearly established in decisions of the United States Supreme Court."  *Id.* at 1081.  The "CONCLUSION" section of the opinion provides: "The judgment of the district court is reversed and the matter is remanded to the district court to issue the writ of habeas corpus.   REVERSED AND REMANDED WITH INSTRUCTIONS."  *Id.*

On September 3, 2025, the parties filed a joint motion for release.  (Doc. 41.)  The parties "jointly move[d] this Court for an Order providing that Mr. Bieganski be released pending any further judicial review of the Ninth Circuit's Opinion vacating this Court's order denying a writ of habeas corpus and remanding with orders to grant the writ."  (*Id.* at 1.)  The parties noted that "[t]he mandate has not yet issued, and the parties have stipulated to a 30-day extension of time for the Arizona Respondents to consider whether to seek review of the decision. . . .  The Arizona Respondents have not yet decided whether to seek review of the Ninth Circuit decision, either by means of a petition for panel rehearing or rehearing en banc to the full Ninth Circuit or a petition for writ of certiorari to the United States Supreme Court."  (*Id.* at 2.)  The parties also stated that Respondents had "agreed not to contest" the presumption in favor of release arising from the issuance of the Ninth Circuit's decision, "contingent upon the imposition of [certain] release conditions, which shall have effect until this Court enters final judgment in this case."  (*Id.* at 3.)  The stipulated release conditions included the posting of a signature bond, a prohibition against

---

[3]    The court also discussed other Supreme Court cases, including *Patterson v. New York*, 432 U.S. 197 (1977), and *Martin v. Ohio*, 480 U.S. 228 (1987), that rejected burden-shifting challenges.

applying for a passport or traveling outside the United States, certain travel-related reporting requirements, a prohibition against contact with the alleged victims, and a requirement to appear at any federal proceedings in which Bieganski's appearance was ordered by the court. (*Id.* at 3-4.)

That same day, the Court granted the parties' joint motion and adopted their agreed-to release conditions. (Doc. 42.)

On October 3, 2025, the mandate issued. (Doc. 44.)

On December 10, 2025, Respondents filed a petition for certiorari with the Supreme Court. (Doc. 46-1 at 3-32.)

On January 9, 2026, the Supreme Court ordered Bieganski to file a response. (Doc. 46-1 at 180.)

On January 12, 2026, Bieganski filed a motion to enforce the mandate. (Doc. 45.) In that motion, Bieganski sought an order "(1) granting him an unconditional writ of habeas corpus prohibiting his retrial in state court; and (2) vacating his convictions and sentences." (*Id.* at 5.)

On January 22, 2026, Respondents filed a response in which they did not address the merits of Bieganski's arguments and simply requested a "stay [of] enforcement of the mandate until the Supreme Court adjudicates Respondents' certiorari petition." (Doc. 46 at 6.)

On January 30, 2026, the Court denied Bieganski's motion and stayed enforcement of the mandate pending the resolution of the certiorari petition. (Doc. 48.)

On April 20, 2026, the Supreme Court denied the certiorari petition. (Doc. 49-1 at 10.) That same day, Bieganski filed the pending renewed motion to enforce the mandate. (Doc. 49.)

On April 22, 2026, the Court held a status conference. (Doc. 53.) Based on the parties' arguments during the status conference, the Court exonerated the bond that Bieganski had previously posted and established an expedited briefing schedule. (*Id.*)

On April 27, 2026, Respondents filed a response. (Doc. 55.)

On May 4, 2026, Bieganski filed a reply.  (Doc. 56.)

On May 11, 2026, the Court issued a tentative ruling.  (Doc. 58.)

On May 18, 2026, the Court heard oral argument.  (Doc. 59.)

**DISCUSSION**

Both sides agree that Bieganski is now entitled to the issuance of a writ of habeas corpus.  The dispute turns on the form that writ should take—Bieganski contends he is entitled to an unconditional writ under which Arizona would be precluded from retrying him, while Respondents contend he is entitled to a conditional writ under which retrial would be possible.  As explained below, the Court concludes that Respondents are correct and that a conditional writ should issue.

As a threshold matter, there is no merit to Bieganski's contention that the issuance of an unconditional writ is compelled by the Ninth Circuit's decision.  (Doc. 49 at 2-3.)  Of course, this Court must follow the "rule of mandate doctrine," which provides that "[w]hen a case has been once decided by [an appellate] court on appeal, and remanded to the district court, whatever was before [the appellate] court, and disposed of by its decree, is considered as finally settled.  The district court is bound by the decree as the law of the case, and must carry it into execution according to the mandate.  That court cannot vary it, or examine it for any other purpose than execution; or give any other or further relief; or review it, even for apparent error, upon any matter decided on appeal; or intermeddle with it, further than to settle so much as has been remanded." *United States v. Thrasher*, 483 F.3d 977, 981 (9th Cir. 2007) (cleaned up).  But the rule of mandate does not resolve the present dispute because the Ninth Circuit did not specify, in its opinion, whether the writ to be issued on remand should be conditional or unconditional (and did not otherwise address the possibility of a retrial in state court following remand).  The final portion of the Ninth Circuit's decision simply reads: "The judgment of the district court is reversed and the matter is remanded to the district court to issue the writ of habeas corpus. REVERSED AND REMANDED WITH INSTRUCTIONS." *Bieganski*, 149 F.4th at 1081.  The Court cannot find, in this directive, any guidance whatsoever on the question

of whether the writ should be conditional or unconditional.  Thus, the rule of mandate does not control: "[T]he district court may consider and decide any matters left open by the mandate of this court."  *Thrasher*, 483 F.3d at 981 (cleaned up).[4]

Also unavailing is Bieganski's contention that because Respondents did not, in their response to his initial motion to enforce the mandate, address his arguments regarding a conditional-versus-unconditional writ, they should be deemed to have "waived any argument that these are not the appropriate remedies."  (Doc. 49 at 5-6.)  Bieganski cites no authority supporting the proposition that when one party files a motion, the opposing party successfully opposes that motion, and the movant subsequently refiles a new motion seeking the same or similar relief, the forfeiture doctrine somehow precludes the opposing party from raising, in its second opposition brief, additional arguments that were not contained in its first successful opposition brief.  At any rate, courts "have discretion to overlook forfeiture in exceptional cases including when the issue presented is purely one of law."  *United States v. Valle*, 940 F.3d 473, 480 n.7 (9th Cir. 2019).  Such is the case here.

Turning the merits, "[t]he typical relief granted in federal habeas corpus is a conditional order of release unless the State elects to retry the successful habeas petitioner . . . ."  *Herrera v. Collins*, 506 U.S. 390, 403 (1993).  As the Ninth Circuit has explained, "[w]hen a court issues a writ of habeas corpus, it declares in essence that the petitioner is being held in custody in violation of his constitutional (or other federal) rights.  Given that function of the writ, courts originally confined habeas relief to orders requiring the petitioner's unconditional release from custody.  In modern practice, however, courts employ a conditional order of release in appropriate circumstances, which orders the State to release the petitioner unless the State takes some remedial action, such as to retry (or resentence) the petitioner."  *Harvest v. Castro*, 531 F.3d 737, 741-42 (9th Cir. 2008)

---

[4]    During oral argument, Bieganski pointed to a particular sentence in the Ninth Circuit's opinion—the sentence that reads, "In Bieganski's case, the Arizona Court of Appeals was bound by *Holle II*," *Bieganski*, 149 F.4th at 1081—as proof that the Ninth Circuit intended to foreclose a retrial in state court.  The Court respectfully disagrees.  The cited sentence is too ambiguous to implicate the rule of mandate when it comes to the question of a conditional-versus-unconditional writ.

(cleaned up). "Such conditional orders are essentially accommodations accorded to the state, in that conditional writs enable habeas courts to give States time to replace an invalid judgment with a valid one." *Id.* at 742 (cleaned up).

There is no reason to deviate from this typical practice here. Indeed, Bieganski consistently argued before the Arizona Court of Appeals and this Court that a new trial would be a permissible remedy for the burden-shifting violation (and did not argue otherwise in his briefs to the Ninth Circuit). Even if those statements don't have a formal estoppel effect, they underscore a commonsense point—it would be anomalous for Bieganski to receive, in habeas, a more expansive remedy than that which he sought during the underlying state-court proceedings whose constitutionality he has now successfully challenged.

The issuance of a conditional writ, leaving open the possibility of a retrial, is also supported by *Mullaney*, one of the main authorities on which the Ninth Circuit relied in granting relief. In *Mullaney*, a defendant who was convicted of murder in Maine state court argued that a provision of "Maine law [that] requires a defendant to establish by a preponderance of the evidence that he acted in the heat of passion on sudden provocation in order to reduce murder to manslaughter" was unconstitutional because "the Due Process Clause requires the prosecution to prove beyond a reasonable doubt the absence of the heat of passion on sudden provocation when the issue is properly presented in a homicide case." *Mullaney*, 421 U.S. at 703. After "[t]he Maine Supreme Court rejected this contention," the defendant "successfully petitioned for a writ of habeas corpus in Federal District Court." *Id.* at 688 (citing *Wilbur v. Robbins*, 349 F. Supp. 149 (D. Me. 1972)). Notably, the district court granted a conditional writ authorizing a retrial: "[T]his Court holds that petitioner's conviction was obtained in violation of his Fourteenth Amendment right to due process of law. Accordingly, the judgment of conviction and sentence imposed upon petitioner by the Franklin County Superior Court is vacated, and the matter is remanded to that court to afford the State an opportunity to grant petitioner a new trial. In the event of the failure of the State to grant petitioner such relief within 60 days from the date hereof,

the writ will be sustained and petitioner ordered discharged from custody." *Wilbur*, 349 F. Supp. at 154. The First Circuit then affirmed the district court's decision, both on initial review, *Wilbur v. Mullaney*, 473 F.3d 943 (1st Cir. 1973), and after the Supreme Court granted certiorari and remanded for reconsideration, *Wilbur v. Mullaney*, 496 F.2d 1303 (1st Cir. 1974). The latter decision provided: "The order affirming the order of the district court is reinstated." *Id.* at 1307. Finally, the Supreme Court affirmed the First Circuit's final decision. *Mullaney*, 421 U.S. at 703 ("[T]he judgment below is affirmed.").

*Mullaney* suggests that when, as here, a state-law conviction is overturned on the ground that the underlying criminal law unconstitutionally shifted the burden of proof to the defendant in violation of the Due Process Clause, a proper remedy for the constitutional violation would be a retrial during which the burden of proof is properly allocated.[5] This outcome makes sense and is consistent with the rationale underlying the modern practice of favoring conditional writs, which are "essentially accommodations accorded to the state" that "enable habeas courts to give States time to replace an invalid judgment with a valid one." *Harvest*, 531 F.3d at 742 (cleaned up). In contrast, Bieganski's proposed outcome—in which a retrial would be categorically barred, regardless of the strength of the evidence and regardless of the alleged victims' interest in his prosecution—would be disproportionate to the underlying constitutional violation and potentially result in a windfall.

Notwithstanding all of this, Bieganski contends that a retrial with a properly allocated burden of proof would be impossible because "[t]he Arizona Supreme Court has definitively announced that the statute, as written, requires a defendant to prove lack of sexual interest as an affirmative defense," so "[i]n effect, the State is asking this Court to allow it to completely rewrite the statute and prosecute Mr. Bieganski under a version of the statute that did not exist at the time of the offense." (Doc. 56 at 2.) This argument

---

[5]  As noted, the Ninth Circuit identified *Morrison v. California*, 291 U.S. 82 (1934), and *Tot v. United States*, 319 U.S. 463 (1943), as two additional cases in which a criminal conviction was reversed due to impermissible burden-shifting. Both decisions simply reversed without providing any indication as to whether a retrial, with a properly allocated burden of proof, could occur following remand. Additionally, the underlying decisions in those cases (unlike in *Mullaney*) shed no light on the new-trial issue.

lacks merit.  First, it is inconsistent with *Mullaney*, which, as noted, ordered the issuance of a conditional writ authorizing a retrial even though the underlying state law as interpreted by the state courts required the burden of proof to be allocated in an unconstitutional manner.  Second, to the extent Bieganski's argument might be viewed as some variant of an *ex post facto* challenge, the only contemplated change in the law during his retrial—placing the burden of proof on the prosecution to prove the presence of sexual motivation, rather than placing the burden of proof on him to prove the absence of sexual motivation—would be favorable to him and have the effect of limiting, rather than expanding, the universe of conduct that was deemed criminal at the time of the challenged conduct.  When a change to a criminal law "does not punish as a crime an act previously committed, which was innocent when done; nor make more burdensome the punishment for a crime, after its commission; nor deprive one charged with crime of any defense available according to law at the time when the act was committed," "[i]ts application . . . is not prohibited by the Ex Post Facto Clause."  *Collins v. Youngblood*, 497 U.S. 37, 52 (1990).  *See also Weaver v. Graham*, 450 U.S. 24, 29 (1981) ("[O]ur decisions prescribe that two critical elements must be present for a criminal or penal law to be *ex post facto*: it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it.").  Third, to the extent Bieganski's argument is simply that the contemplated change to the burden of proof would be impermissible as a matter of Arizona law, due to the manner in which the Arizona Supreme Court previously construed the statute, the resolution of that issue should be left, in the first instance, to the Arizona courts.  *Cf. Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996) ("We accept a state court's interpretation of state law, and alleged errors in the application of state law are not cognizable in federal habeas corpus.") (citation omitted).  Perhaps the Arizona courts will agree with Bieganski, following the issuance of the conditional writ, that the limited form of retrial being authorized here—a retrial in which the prosecution will bear the burden of proof on the element of sexual motivation—is impossible as a matter of Arizona law.  In that circumstance, Bieganski will be free to return to this Court to seek

further relief. *Harvest*, 531 F.3d at 742 ("The consequence when the State fails to replace an invalid judgment with a valid one is always release.") (cleaned up); *Satterlee v. Wolfenbarger*, 453 F.3d 362, 368-69 (6th Cir. 2006) ("The district court issued a conditional writ, allowing Satterlee to apply for immediate release unless the state made within sixty days a plea offer of six to twenty years. Because the state made no such offer in the allotted time, the district court granted an unconditional writ ordering Satterlee's immediate release. The state contends that the district court did not have the power to order this remedy. What the state appears to have forgotten is that it did not comply with the conditional writ. . . . Thus, we conclude that the district court acted well within its power by ordering Satterlee's immediate release.").

*Smith v. Goguen*, 415 U.S. 566 (1974), which Bieganski cites in his motion papers, does not compel a different conclusion. *Smith* did not involve a criminal statute that misallocated the burden of proof as to critical facts that establish the crime. Rather, the issue in *Smith* was that a Massachusetts "flag-misuse statute" utilized "inherently vague statutory language [that] permits . . . selective law enforcement," thereby rendering the statute unconstitutionally vague. *Id.* at 568, 576. *Smith* sheds no light on whether a conditional or unconditional writ of habeas corpus should issue after a conviction is deemed invalid due to a misallocated burden of proof.

Finally, to the extent Bieganski argues that this Court should "not just vacate [the] conviction, but . . . order records of the conviction entirely expunged" (Doc. 49 at 5), that request is premature in light of the determination that a conditional, rather than unconditional, writ should issue.

…

…

…

…

…

…

- 11 -

Accordingly,

**IT IS ORDERED** that:

1. Bieganski's renewed motion to enforce mandate (Doc. 49) is **granted in part and denied in part**.

2. A conditional writ of habeas corpus is issued. Bieganski's judgment of conviction and sentence is vacated and this matter is remanded to the Navajo County Superior Court for a potential retrial in which the prosecution will bear the burden of proof on the issue of sexual motivation. This order does not resolve whether such a retrial is permissible as a matter of Arizona law—that is an issue for the Arizona courts to address. Assuming the Arizona courts conclude that the authorized retrial is permissible under Arizona law, it must occur within 90 days of the issuance of this order (which deadline may be extended at Bieganski's request). If it does not occur within that timeframe, Bieganski may apply to this Court for the issuance of an unconditional writ.

3. Attorney Randal McDonald is appointed, pursuant to 18 U.S.C. § 3006A(a)(2)(B) ("seeking relief under section . . . 2254 . . . of title 28") and § 3006A(c) ("ancillary matters appropriate to the proceedings"), to represent Bieganski in the state-court proceedings, but only for the limited purpose of litigating whether the authorized retrial is permissible under Arizona law.

Dated this 19th day of May, 2026.

_____
Dominic W. Lanza
United States District Judge

- 12 -